## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **SHAWN LYNN REITMAYER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 15-1283-JWL** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (the Act).  Plaintiff has filed a motion to supplement the record (Doc. 15) which is also before the court.  The court is without jurisdiction to supplement the administrative record in judicial review of a decision of the Commissioner, there is no basis in this case to remand for the taking of additional evidence, and the court finds no error in the decision below.  The court ORDERS that Plaintiff's motion is DENIED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the final decision of the Commissioner.

## I.     Background

Plaintiff applied for DIB and SSI benefits, alleging disability beginning September 30, 2011.  (R. 15, 174, 176).  He exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  Plaintiff argues that the Administrative Law Judge (ALJ) "failed to provide a full transcript of the entire proceedings" (Doc. 17, p.2) (hereinafter Pl. Br.), failed to provide an adequate analysis regarding Listing 1.02A, erred in weighing the opinions of Dr. Appl, and Dr. Hendricks, erred in relying on the Medical-Vocational Guidelines (the grids), and erred in his credibility analysis.  Id. at 2-3.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  The Act provides that "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses a five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors

of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the decision below.  It first addresses Plaintiff's motion to supplement the record and whether remand in accordance with the sixth sentence of 42 U.S.C. § 405(g) is appropriate.  It then addresses each issue raised in Plaintiff's Social Security Brief in the order of the sequential process, and finds no reversible error.

## II.    Motion to Supplement the Record - Sentence Six Remand

On the same day he filed his Social Security Brief, Plaintiff made a motion to supplement the record and included a forty-page attachment, labeled "Exhibit A" and docketed as "Supplement missing medical evidence from SSA [(Social Security Administration)] file."  (Doc.15, and Attach. 1).  He alleges that the documents in Attachment 1 to his motion were submitted to the Social Security Administration's Appeals Council by facsimile transmission on October 14, 2014, and that the Appeals Council stated that it had reviewed the documents when denying Plaintiff's request for review of the ALJ's decision, but that the documents were mistakenly not included in the

administrative record.  (Doc. 16, pp.2-3).  He claims that without these documents, the administrative record is incomplete, and must be supplemented with the documents.  Id.

The Commissioner argues that the Appeals Council reviewed the documents attached to Plaintiff's motion and determined that they are not relevant to the period at issue.  (Doc. 18, p.1).  She argues that there is no basis for supplementing the record, that 42 U.S.C. § 405(g) is the sole basis for the court's jurisdiction to review a decision by the Commissioner, and that the statute does not include authority for the court to supplement the record.  Id. at 1-2.  She points out that sentence six of the statute allows a court to remand for consideration of evidence that is new and material if there is good cause for the failure to incorporate the evidence into the record before the Commissioner, but she argues that "Plaintiff has not requested that the Court [sic] remand his claim under sentence six."  Id. at 2.  She argues that as the Appeals Council determined, the evidence is not relevant to the period before the ALJ's decision, the court's review is limited to the administrative record, and the court should decline to consider the evidence.

The court's jurisdiction and its review of a decision of the Commissioner are guided and limited by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)).  42 U.S.C. § 405(g) is the sole basis for this court's jurisdiction in a Social Security case.  Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998).  Section 405(g) of the Act provides for review of a final decision of the Commissioner, made after a hearing in which the Plaintiff was a party.  It also provides that the court's review is made "upon the pleadings and transcript of the record"

5

and that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

Plaintiff attempts to get around the limitation to consideration of only the administrative record by arguing that the evidence at issue was submitted to and considered by the Appeals Council but was mistakenly "not included in the official transcript." (Doc. 16, p.2). Plaintiff's argument reflects a misunderstanding both of the Social Security regulations and of what actually happened in this case.

The Commissioner has promulgated regulations which provide that a claimant might submit new evidence to the Appeals Council. 20 C.F.R. §§ 404.970, 404.976, 416.1470, 416.1476. "The Appeals Council will consider . . . any new and material evidence submitted to it that relates to the period on or before the date of the administrative law judge hearing decision." Id. at 404.976(b), 416.1476(b).

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.

20 C.F.R. §§ 404.970(b), 416.1470(b).

The regulations also explain what will happen if the evidence submitted to the Appeals Council does not relate to the period at issue:

> If you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will <u>return the additional evidence to you</u> with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application.

20 C.F.R. §§ 404.976(b), 416.1476(b) (emphasis added).

The Appeals Council's actions in this case illustrate both what it does with additional evidence that is relevant and with additional evidence that is not relevant. Here, the Council identified two groups of additional evidence Plaintiff had submitted:

> a brief from Linda K. Peterson dated October 14, 2014 (two pages), a brief from Linda K. Peterson dated July 6, 2015 (two pages), Kelly J. Hendricks, M.D. records dated November 13, 2013 (four pages), and Providence Medical Center records dated December 2, 2013 (five pages) [(the first group)] . . . [and] a questionnaire from Kelly Hendricks, M.D. dated April 25, 2014 (two pages) and Providence Medical Center records dated March 29, 2014 to April 4, 2015 (24 pages) [(the second group)].

(R. 2).

The Council stated that in looking at Plaintiff's case, it had "considered . . . the additional evidence listed on the enclosed Order of Appeals Council." <u>Id.</u> The "Order of Appeals Council" stated, "The Appeals Council has received additional evidence which it is making part of the record. That evidence consists of the following exhibits," Exs. 21E, 22E, 11F, and 12F. (R. 6). Those exhibits are included in the administrative record filed with this court in this case (R. 302-07, 440-48), and correspond precisely to the first group of additional evidence discussed above that Plaintiff submitted and the Council identified. The Council stated that it had considered this additional evidence, but it

7

"found that this information does not provide a basis for changing the Administrative Law Judge's decision," and it denied Plaintiff's request for review. (R. 2).

The second group of additional evidence identified includes the evidence Plaintiff attached to his motion to supplement, and the Appeals Council also explained how it had handled that evidence: "The Administrative Law Judge decided your case through January 24, 2014. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 24, 2014." (R. 2). It explained, "If you want us to consider whether you were disabled after January 24, 2014, you need to apply again." Id.

As noted above, the Appeals Council issued an Order making the first group of additional evidence a part of the administrative record in this case, and the court will consider that evidence in its judicial review. The Appeals Council decided that the second group of additional evidence was not chronologically relevant to the decision and declined to make it part of the administrative record. Therefore the court is without jurisdiction to consider that evidence in judicial review of the decision. It is also without jurisdiction to supplement the administrative record with evidence not contained therein.

In so far as the Commissioner is concerned, that ends the matter because Plaintiff did not request a sentence six remand. However, Plaintiff argued in support of his motion to supplement that the Appeals Council stated it had reviewed the questionnaire of Dr. Hendricks and the records from Providence Medical Center. (Doc. 16, p.2). Moreover, in his Social Security Brief filed the same day as his motion to supplement, Plaintiff

8

argued that Dr. Hendricks's questionnaire is chronologically relevant (Pl. Br. 14), and he requested "remand to provide an accurate record of the proceedings." (Pl. Br. 18). Therefore, out of an abundance of caution, the court considers whether a sentence six remand is appropriate based on the evidence at issue.

The Tenth Circuit has explained certain principles to use when considering evidence submitted directly to the Council, recognizing that the Council must:

> consider evidence submitted with a request for review if the additional evidence is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision. Whether evidence qualifies as new, material and chronologically relevant is a question of law subject to our de novo review. If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision. If the evidence does qualify and the Appeals Council considered it in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard. Finally, if the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings.

Chambers v. Barnhart, 389 F.3d 1139, 1142 (10th Cir. 2004) (citations, brackets, and quotations omitted).

As discussed above, the Appeals Council did not consider the second group of additional evidence presented to it--Dr. Hendricks's questionnaire and the Providence Medical Center records dated March 29, 2014 to April 4, 2015. Plaintiff argues, contrary to the Appeals Council's determination, that the evidence qualifies as chronologically relevant to the period before the ALJ's decision. In accordance with Chambers, the court will make a de novo determination regarding that issue.

Plaintiff claims Dr. Hendricks's questionnaire is relevant to the applicable time period because Plaintiff testified at the hearing that he had an appointment scheduled with a new doctor, and he kept that appointment with Dr. Hendricks just two weeks after the hearing. (Pl. Br. 13). He argues that Dr. Hendricks's questionnaire opinion was based upon the November 2013 visit even though it was dated five months later and three months after the ALJ issued his decision. Id. at 13-14. Therefore, he argues that the opinions expressed therein are relevant to the applicable time period and the questionnaire is chronologically relevant. The Commissioner argues that Dr. Hendricks's questionnaire contains nothing "to indicate that it is retrospective or otherwise relevant to the time period at issue," and that "Plaintiff also fails to show that the other records he submitted should be read retrospectively." (Doc. 18, p.2).

The court agrees with the Commissioner. Dr. Hendrick's questionnaire opinion was completed five months after his first examination of Plaintiff and three months after the ALJ issued his decision, and there is little in the questionnaire to indicate the limitations therein should be applied retrospectively. The questionnaire indicates that Plaintiff "had" certain findings based upon Dr. Hendricks's "review of the medical records." (Doc. 16, Attach. 1, p.6). The answers to this question appear to be findings based at least in part upon Plaintiff's reports of symptoms in past medical records (past at the time of the questionnaire), but they do not opine regarding past functional limitations resulting therefrom. Moreover, they do not indicate what past medical records were reviewed. It is at least possible that these questions were answered based exclusively on

10

Dr. Hendricks's medical records--all of which post-date the administrative hearing, and only one of which is known to pre-date the ALJ's decision.  The court may not speculate. The next group of questions and answers in Dr. Hendricks's questionnaire opinion are framed in terms of current functional limitations (at the time of the questionnaire-April 25, 2014), and Dr. Hendricks makes no attempt to apply the limitations retrospectively. (Doc. 16, Attach. 1, p.6).  To be sure, the questionnaire ends with the question, "how long has Mr. Reitmeyer [sic] been limited as described above?"  Id. at 7.  Dr. Hendricks responded, "he has 10yrs history of knee pain."  Id.  That is not an opinion that the limitations lasted ten years, but an acknowledgment that the date Plaintiff's current limitations began is not within Dr. Hendricks's personal knowledge.

The fact that Dr. Hendricks's questionnaire was "based on" his November 2013 examination does not require a finding that the questionnaire relates back to the time period before the ALJ's decision.  Were it otherwise, every opinion by every medical source who ever examined a claimant before a decision issued would be chronologically relevant to the period before the decision. That is so because medical opinions are necessarily, incrementally cumulative of (and therefore based on) all of that medical source's examinations and treatment of a patient no matter how much later the opinion was formulated.  That is too tenuous a link to establish chronological relevance.

As the Commissioner argues, Plaintiff has not shown that the Providence Medical Center records dated March 2014 through April 2015 should be read retrospectively or that they are otherwise chronologically relevant to the period before the ALJ's decision

issued.  Plaintiff has not demonstrated that the records attached to his motion to supplement are chronologically relevant to the period at issue here.  Therefore, remand in accordance with the sixth sentence of 42 U.S.C. § 405(g) is not appropriate.

## III.   Listing 1.02A

Plaintiff claims the ALJ failed to properly consider Listing 1.02A.  He quotes portions of Listing 1.02A, and cites to evidence showing "severe osteoarthritis" or "moderately advanced osteoarthritis," use of assistive devices, chronic joint pain, and limited range of motion.  (Pl. Br. 10-11).  And he argues that "[t]he ALJ provided no analysis as to whether Mr. Reitmayer experiences difficulties in the ability to ambulate effectively," that Plaintiff's statements indicate difficulty cooking and caring for personal needs, and that he is a candidate for a total knee replacement.  Id. at 11.  The Commissioner argues that the record does not establish sufficient limitation in walking to constitute ineffective ambulation.  (Doc. 21, p.10) (hereinafter Comm'r Br.).  In his Reply Brief, Plaintiff argues that the ALJ's failure to provide an adequate discussion is not harmless in this case because he "showed evidence of meeting Listing 1.02 from a medical standpoint."  (Doc. 22, pp.1-2) (hereinafter Reply).  He argues that the ability to ambulate effectively requires the ability to sustain a reasonable walking pace to carry out activities of daily living and the ability to travel without assistance, and that the record supports "a finding that Mr. Reitmayer is unable to perform these activities independently."  Id. at 2.

As Plaintiff suggests, the ALJ's step three analysis consists of but one paragraph:

> The claimant's bilateral knee osteoarthritis does not meet the criteria of Listing 1.02, *dysfunction of a major weight-bearing joint due to any cause.* To meet the Listing, the claimant's condition would have to he characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability), chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings using appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). Further, the evidence would have to establish that the claimant is unable to ambulate effectively, as defined in 1.00B2b. As discussed in the analysis below, the evidence does not demonstrate that the claimants' [sic] bilateral knee condition meets the criteria of the listing (Exhibit(s) 2, 5, 6, 9, and 10F).

(R. 19) (italics in original).

Plaintiff "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet <u>all</u> of the specified medical criteria' contained in a particular listing." <u>Riddle v. Halter</u>, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990) (emphasis in <u>Zebley</u>)). "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing. <u>Zebley</u>, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing <u>any</u> gainful activity, not just 'substantial gainful activity.'" <u>Zebley</u>, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled

regardless of their vocational background." <u>Yuckert</u>, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." <u>Caviness v. Apfel</u>, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

As the ALJ specifically noted, his discussion in the RFC assessment reveals his finding that the evidence demonstrates Plaintiff's condition does not meet or equal the criteria of the listing because it does not demonstrate the inability to ambulate effectively. He found that the medical records "April 2010 through June 23, 2010 make no mention of knee pain and there is no clinical indication the claimant was having problems." (R. 20).[1] The decision noted that when Plaintiff reported to the emergency department complaining of knee pain on December 10, 2011, he "was not using a brace or ambulating with a cane or walker" (R. 21) (citing Ex. 2F/4-10 (R. 328-35). The ALJ discussed consultative examinations which were done at the request of the state agency and noted that Plaintiff presented for a psychological examination on August 27, 2012 using a walker and wearing a knee brace on the right knee (R. 21, 422), but on September 10, 2012 he presented for a physical examination using a cane and wearing a hinged brace on the right knee with a Neoprene brace on the left knee. (R. 21, 427-30). The ALJ noted that the physical examiner stated the Neoprene brace was unnecessary while the hinged brace was necessary, and that the cane was necessary for gait but not station. <u>Id.</u> The ALJ summarized his findings in this regard:

---

[1]The exhibit to which the ALJ cited does not include the dates stated, but the treatment notes to which the ALJ referred are found in the record at 391-94 and 417-19.

> [Plaintiff] presented during the consultative examinations first with a
> walker, and then a few weeks later with a cane, and bilateral braces.
> However, the left knee brace was not necessary for gait or station according
> to the consultants' [sic] findings.  He used a cane but his station was stable
> without the use of a cane.  Treatment notes from his primary care provider
> in December 2012 and September 2013 do not indicate the claimant made
> use of any assistive device.

(R. 22).  These finding confirm that the ALJ determined that Plaintiff does not meet or

equal the criteria of Listing 1.02A because he has not shown the inability to ambulate

effectively as required by the Listing.  The decision reveals that contrary to Plaintiff's

assertion otherwise, the ALJ discussed Plaintiff's ability to ambulate effectively even

though that discussion was not specifically within his step three analysis.

Plaintiff's arguments in his Reply Brief do not require finding otherwise.  It is by

no means clear what Plaintiff means when he asserts that he "showed evidence of meeting

Listing 1.02 from a medical standpoint."  (Reply 1-2) (emphasis added).  The court's best

guess is that Plaintiff means he has shown that he meets all of the criteria of the

introductory paragraph of Listing 1.02--(1) gross anatomical deformity, (2) chronic joint

pain and stiffness with either (a) limited motion or (b) abnormal motion of that joint, and

(3) finding in the affected joint on medically acceptable imaging of either (a) joint space

narrowing, (b) bony destruction, or (c) ankylosis.  20 C.F.R., Pt. 404, Subpt. P, App. 1

§ 1.02.  In his Social Security Brief, Plaintiff argues that x-rays show joint space

narrowing (criterion 3a), that the ALJ does not deny chronic pain and stiffness, and that

the record shows limited motion (criterion 2a).  (Pl. Br. 11).  In his Reply Brief, Plaintiff

also argues that the record shows a gross anatomical deformity (criterion 1) (a varus

deformity).  (Reply 1).  Although Plaintiff did not cite to a "gross anatomical deformity" when making the Listing argument in his Brief, his "Statement of Facts" include both varus (bent inward) and valgus (bent outward) deformity reflected in Dr. Hendricks's treatment notes (Pl. Br. 4) (citing R. 441), and a varus deformity noted by "Dr. Winston," greater on the right than the left.  (Pl. Br. 5) (citing R. 430).[2]  Leaving aside the question whether Plaintiff's Social Security Brief provided adequate notice to the Commissioner that Plaintiff was arguing his condition meets criteria one through three of Listing 1.02A, and leaving aside the issue of how it is possible to have both varus <u>and</u> valgus deformities of the knee, this issue can be decided based on the ALJ's finding that Plaintiff has not presented evidence of an inability to ambulate effectively--even if the court assumes without deciding that all of the other criteria are met.

Plaintiff implies that he is unable to ambulate effectively because he is unable to sustain a reasonable walking pace to carry out activities of daily living or to travel without assistance.  (Reply 2).  These arguments are without merit.  While it is no doubt true that Plaintiff's knee impairment affects him and causes problems with daily activities "secondary to physical pain associated with his bilateral knee condition" (R. 18), he has not shown the kind of "extreme limitation of the ability to walk" contemplated by the regulations.  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.00B2b.  Moreover, at the hearing

_____

[2]The page cited is not a record of "Dr. Winston," and says nothing about a deformity.  Nonetheless, it is the "Conclusions" and signature page of Dr. Henderson's consultative physical examination report, and in that report Dr. Henderson noted that Plaintiff has a "[v]arus deformity of the knees, right greater than the left."  (R. 428).

16

Plaintiff acknowledged that he could, and had, made the approximately three-hour trip from Kansas City to Wichita Kansas alone, thereby demonstrating the ability to travel without companion assistance.  (R. 48-49).

## IV.    Medical Opinions

Plaintiff asserts that the ALJ did "not provide a legitimate reason for providing minimal weight to the opinion of Dr. Appl."  (Pl. Br. 13).  He also claims the Appeals Council did not properly weight Dr. Hendricks's opinion.  Id. at 13-14.  He concludes by asserting that "[t]he entirety of the record supports the findings of Dr. Appl and Dr. Hendricks."  Id. at 14.  The Commissioner argues that the ALJ properly considered Dr. Appl's opinion, that he properly pointed out that Dr. Appl's opinion (that Plaintiff is totally disabled) is on an issue reserved to the Commissioner and that he properly pointed out inconsistencies between Dr. Appl's opinion and his treatment notes and between that opinion and the record.  (Comm'r Br. 13-14).  She argues that the only opinion of Dr. Hendricks which is in the administrative record is that Plaintiff needs a knee replacement "at some point in the near future."  Id. at 15 (quoting R. 11).  She explains why, in her view, the state agency medical consultant's opinion is better supported by the record evidence than is Dr. Appl's opinion, and was properly accorded substantial weight by the ALJ.  Id. at 13-16.

### A.    Standard for Evaluating Medical Opinions

When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned that opinion.  Robinson v. Barnhart,

366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion which is not entitled to

controlling weight is "still entitled to deference and must be weighed using all of the

factors provided in 20 C.F.R. § 404.1527 and 416.927."  Watkins v. Barnhart, 350 F.3d

1297, 1300 (10th Cir. 2003).  Those factors are: (1) length of treatment relationship and

frequency of examination; (2) the nature and extent of the treatment relationship,

including the treatment provided and the kind of examination or testing performed; (3) the

degree to which the physician's opinion is supported by relevant evidence;

(4) consistency between the opinion and the record as a whole; (5) whether or not the

physician is a specialist in the area upon which an opinion is rendered; and (6) other

factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id.

at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari,

255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human

Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  However, the court will not insist on a factor-

by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear

to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254,

1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

   After considering the regulatory factors, the ALJ must give good reasons in his

decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion

he must give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at 1301.

### B.      The ALJ's Findings Regarding Medical Opinions

The ALJ evaluated the medical opinions of Plaintiff's primary care treating physician, Dr. Appl, of the state agency medical consultant, Dr. Listerman, who reviewed the medical evidence at the reconsideration level, of the consultant psychologist, Dr. Nystrom, who examined Plaintiff at the request of the state agency and provided a report of that examination, and of the state agency psychological consultants who review the medical evidence at both the initial and reconsideration levels. (R. 22-23). The ALJ accorded no weight to the opinion of the state agency psychological consultant at the initial level because it was inconsistent with the evidence, particularly the report of Dr. Nystrom. He gave substantial weight to Dr. Nystrom's opinion and to the opinion of the state agency psychological consultant at the reconsideration level because it is consistent with Dr. Nystrom's opinion. Plaintiff does not take issue with the ALJ's evaluation of the psychologists' opinions, and the court will not address them further.

The ALJ also accorded substantial weight to Dr. Listerman's opinion because it is consistent with Plaintiff's reported daily functioning, is consistent with the physical examination findings, and is consistent with the imaging studies showing significant right knee degenerative joint disease. (R. 23). But, before assigning weight to any of the other medical opinions the ALJ discussed the opinion Dr. Appl. (R. 22-23). He noted that Dr. Appl specifically opined that Plaintiff is totally disabled and that Dr. Appl also provided an RFC form asserting generally disabling limitations. Id. at 22. He accorded the opinion of total disability no weight because it is an issue reserved to the Commissioner. Id. But he evaluated Dr. Appl's opinion regarding functional limitations separately, and accorded

19

it minimal weight because it is not consistent with the record as a whole or with Dr.

Appl's treatment notes just a few months later.  (R. 22-23) (citing Ex. 9F, R. 435-37).

### C.    Analysis

As a preliminary matter, the court notes that Dr. Hendricks's questionnaire opinion

dated April 25, 2014 is not a part of the administrative record, and has no part in judicial

review of the decision in this case.  Therefore, as the Commissioner points out Dr.

Hendricks's only opinion in the record is the statement in his November 13, 2013

treatment note that Plaintiff "does require a TKA [(total knee arthroplasty-knee

replacement)] at some point in the near future."  (R. 441).  That the ALJ did not evaluate

this opinion is unremarkable because it was not before the ALJ.  Nevertheless, the

Appeals Council reviewed this opinion and determined that it would not change the

ALJ's decision.  (R. 2).  The court agrees.  Although Dr. Hendricks's statement might be

seen to provide some minimal support for Dr. Appl's functional limitations, the ALJ

acknowledged that Plaintiff has severe degenerative joint disease of his knees status/post

surgery, and he summarized the history of Plaintiff's knee injuries and surgeries.  (R. 17,

20).  The ALJ recognized x-ray evidence of severe osteoarthritis, moderately advanced

osteoarthritis, osteochondromatosis, and post operative changes in Plaintiff's right knee,

and he noted that surgical options for Plaintiff's right knee were discussed on September

10, 2013.  (R. 20-21).  None of this requires greater weight to Dr. Appl's opinions.

Plaintiff's argument that the ALJ did "not provide a legitimate reason for

providing minimal weight to the opinion of Dr. Appl" (Pl. Br. 13) is without merit.  As

noted above, the ALJ accorded Dr. Appl's opinion minimal weight because it is not consistent with the record as a whole or with Dr. Appl's treatment notes just a few months later.  (R.22-23).  Plaintiff is correct that the treatment notes referred to by the ALJ do not indicate that Plaintiff's knee pain had resolved (Pl. Br. 13), but the mere presence of pain while working is not conclusive of disability.  As the ALJ noted, Dr. Appl's treatment notes do not reflect "the level of functional capacity [Dr. Appl] alleged in the opinion statement."  (R. 23).  This is a legitimate reason to discount Dr. Appl's opinion.  And, Plaintiff ignores the rest of the evidence in the record which is inconsistent with Dr. Appl's opinion--such as Plaintiff's reported daily activities and the medical opinion of Dr. Listerman that Plaintiff has lesser functional limitations.  Plaintiff has shown no error in the ALJ's evaluation of the medical opinions.

## V.    Credibility Determination

Plaintiff claims the ALJ erred in evaluating the credibility of Plaintiff's allegations of symptoms resulting from his impairments.  He argues that the ALJ provided "very little connection between his findings and an accurate description of the record."  (Pl. Br. 16).  He asserts that the ALJ's characterization of his daily activities are inconsistent with Plaintiff's and third party statements regarding Plaintiff's activities.  Id. at 16-17.  The Commissioner argues that the ALJ provided "legally sufficient reasons for his credibility determination" (Comm'r Br. 16), and points out the ALJ's findings that pain medication was not shown to be ineffective, that Plaintiff did not follow through with the recommended right knee surgery (Comm'r Br. 11-12) (citing R. 22), that the medical

evidence did not support limitations as severe as alleged by Plaintiff, and that the

evidence regarding use of an assistive device was inconsistent.  Id. at 17.

The court's review of an ALJ's credibility determination is deferential.  Credibility

determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d

585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).

"Credibility determinations are peculiarly the province of the finder of fact" and will not

be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord

Hackett, 395 F.3d at 1173.

The framework for a proper credibility analysis is set out in Luna v. Bowen, 834

F.2d 161 (10th Cir. 1987).  An ALJ must consider (1) whether the claimant has

established a symptom-producing impairment by objective medical evidence; (2) if so,

whether there is a "loose nexus" between the proven impairment and the claimant's

subjective allegations of pain; and (3) if so, whether, considering all the evidence, both

objective and subjective, the claimant's symptoms are in fact disabling.  See, Thompson

v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework).  The

Commissioner has promulgated regulations suggesting relevant factors to be considered

in evaluating credibility:  Daily activities; location, duration, frequency, and intensity of

symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness,

and side effects of medications taken to relieve symptoms; treatment for symptoms;

measures plaintiff has taken to relieve symptoms; and other factors concerning limitations

or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).  The court has

recognized a non-exhaustive list of factors which overlap and expand upon the factors

promulgated by the Commissioner.  Luna, 834 F.2d at 165-66.  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the
> attempts (medical or nonmedical) to obtain relief, the frequency of medical
> contacts, the nature of daily activities, subjective measures of credibility
> that are peculiarly within the judgment of the ALJ, the motivation of and
> relationship between the claimant and other witnesses, and the consistency
> or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at

1489).

The ALJ here applied the correct legal standard to his credibility determination,

and Plaintiff does not argue otherwise.  Rather, in arguing that the ALJ did not link his

findings to "an accurate description of the record" (Pl. Br. 16), Plaintiff expresses his

disagreement with the ALJ's view of the evidence and asks the court to reweigh the

evidence.  That is something the court may not do.  Bowman, 511 F.3d at 1272; Hackett,

395 F.3d at 1172.

Plaintiff must demonstrate the error in the ALJ's credibility rationale or finding;

the mere fact that there is evidence which might support a contrary finding will not

establish error in the ALJ's determination.  "The possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's findings from

being supported by substantial evidence.  We may not displace the agency's choice

between two fairly conflicting views, even though the court would justifiably have made

a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084

(citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966) (to the same effect).  Therefore, where the ALJ has reached a

reasonable conclusion that is supported by substantial evidence in the record, the court

will not reweigh the evidence and reject that conclusion even if it might have reached a

contrary conclusion in the first instance.

The ALJ need not accept Plaintiff's statements when making his credibility

determination.  The purpose of that determination is to decide whether to accept

Plaintiff's statements.  The ALJ linked his credibility determination to record evidence,

and giving his determination the deference to which it is due, the court finds no error.

## VI.    Use of the Medical-Vocational Guidelines (the grids)

Plaintiff claims the ALJ's reliance on the grids in this case was misplaced for two

reasons:  (1) The ALJ's finding that Plaintiff is limited to standing and/or walking for a

total of only two hours in an eight hour workday has a substantial negative impact on the

occupational base for light work and requires vocational expert (VE) testimony regarding

whether substantial light work is available in the economy which may be performed by an

individual so limited.  (Pl. Br. 14-15).  (2) Plaintiff's non-exertional limitations of pain,

fatigue, poor concentration, and the need to elevate his legs require the use of VE

testimony to determine the extent of their impact on the occupational base.  Id. at 15-16.

The Commissioner argues that the ALJ properly used the grids as a framework in

his decision, and found that there are "a significant number of jobs in the national

economy Plaintiff could perform, given his particular limitations."  (Comm'r Br. 19).  She

then argues that even if Plaintiff were limited to sedentary work as his argument implies, the grids still appropriately direct a finding of "not disabled," because the ALJ found Plaintiff's additional limitations have little or no effect on the occupational base for sedentary work.  Id. at 20-21.

### A.      Standard for Applying the Grids

In the grids, the Commissioner has provided a tool to aid in making uniform, efficient decisions in determining the types and numbers of jobs existing in the national economy for certain classes of claimants.  Heckler v. Campbell, 461 U.S. 458, 468 (1983).  However, the grids are applicable "only when they describe a claimant's abilities and limitations accurately."  Id. 461 U.S. at 462 n.5; see also Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).  Because the grids are based upon the physical exertion requirements for work in the national economy, they may not be fully applicable for claimants who have nonexertional limitations.  Channel, 747 F.2d at 580.  Realizing this limitation on the use of the grids, the Commissioner has promulgated a procedure for evaluating claims where both exertional and nonexertional limitations are present:

> (2) [W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.

25

20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(e)(2); see also Channel, 747 F.2d at 580-81.

The grids direct a finding in a particular case only when there is an "exact fit" between the criteria of the grid and the situation before the ALJ.  Campbell, 461 U.S. at 468; Channel, 747 F.2d at 579.  Where the grid rules do not direct a finding, "full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations which will provide insight into the adjudicative weight to be accorded each factor."  20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(e)(2); see also Channel, 747 F.2d at 579-82 (application of the grids where nonexertional limitations are present).

Where plaintiff is unable to do a full range of work in an exertional category, the ALJ may not conclusively apply the grids.  Channel, 747 F.2d at 582 (error to apply the grids absent a finding that plaintiff could perform the full range of sedentary work).  Instead, he "must give 'full consideration' to 'all the relevant facts,' App. 2, § 200.00(e)(2), including expert vocational testimony if necessary, in determining whether [plaintiff] is or is not disabled."  Channel, 747 F.2d at 583.  Where nonexertional limitations affect the range of work of which plaintiff is capable, the grids may serve only as a framework to assist in determining whether sufficient jobs exist in the national economy given plaintiff's limitations and characteristics.  Gossett, 862 F.2d at 806.

But, "the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids.  Use of the grids is foreclosed only '[t]o the extent that

nonexertional impairments further limit the range of jobs available to the [Plaintiff].'"

Channel, 747 F.2d at 583, n.6 (quoting Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir.

1983)).  Thus, use of a vocational expert is required only where plaintiff's nonexertional

impairments cause a limitation on the range of work available in a particular occupational

base and where no other evidence (either in the record or in occupational resources upon

which the Commissioner may rely, see 20 C.F.R. §§ 404.1566(d), 416.966(d)),

establishes that a significant number of jobs of which Plaintiff is capable are available.

Where the grids establish that a significant number of jobs exist in the economy, the

Commissioner need not introduce evidence of specific available jobs.  Campbell, 461

U.S. at 468-70.

### B.    Discussion

The ALJ assessed the following RFC for Plaintiff:

> After careful consideration of the entire record, the undersigned finds that
> the claimant has the residual functional capacity to perform light work as
> defined in 20 CFR 404.1567(b) and 416.967(b).  The claimant can
> occasionally lift 20 pounds and frequently lift 10 pounds.  He can stand or
> walk 2 hours in an 8-hour workday, and he can sit about 6 hours in an 8-
> hour workday.  His ability to push or pull weight is unlimited other than
> shown for lift or carry.  He can frequently balance and crawl and can
> occasionally kneel and crouch, but is not able to climb ladders, ropes or
> scaffolds.  He should avoid concentered exposure to temperature extremes,
> humidity, vibration, fumes, odors, dusts, gases and poor ventilation.  The
> claimant is able to perform work of a routine nature but not in a fast-paced
> production environment.

(R. 19-20) (finding no. 5) (bolding omitted).

As the Commissioner argues, the ALJ used the grids as a framework for decisionmaking at step five.  (R. 24).  He explained his rationale for finding that Plaintiff is not disabled at step five:

> If the [Plaintiff] had the residual functional capacity to perform the full range of light work, considering [his] age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21.  However, the additional limitations have little or no effect on the occupational base of unskilled light work.  A finding of "not disabled" is therefore appropriate under the framework of this rule.  The same conclusion would be reached were the lifting capacity of claimant even further reduced to sedentary level only since there is minimal exposure to environmental factors and need for precluded postural functions.

(R. 24).

As Plaintiff's argument suggests, by definition a job is included in the exertional category of "light work" "when it requires a good deal of walking or standing."  20 C.F.R. §§ 404.1567(b), 416.967(b).  And Social Security Ruling (SSR) 83-14, discussed the very issue here and recognized that "[t]he major difference between sedentary and light work is that most light jobs–particularly those at the unskilled level of complexity–require a person to be standing or walking most of the workday."  Titles II and XVI:  Capability to Do Other Work–The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments, 1983 WL 31254, at *4 (Jan. 1, 1983) (emphasis added).  Therefore, the court finds that most unskilled light jobs require standing or walking more than two hours in an eight-hour workday and the ALJ erred in failing to seek VE testimony to decide whether Plaintiff's

standing and walking limitation has little or no effect on the occupational base of unskilled light work.

However, that finding does not require remand in the circumstances of this case.  If the RFC assessed by the ALJ is adjusted as suggested by Plaintiff, Plaintiff is still capable of performing a range of sedentary work.  The ALJ recognized that fact, and as quoted above, noted that if Plaintiff were limited to sedentary exertion the conclusion would still be reached that Plaintiff is not disabled.  (R. 24).  Recognizing the ALJ's finding, Plaintiff argued that his non-exertional limitations of pain, fatigue, poor concentration, and the need to elevate his legs require the use of VE testimony to determine the extent of their impact on the sedentary unskilled occupational base.  But Plaintiff's argument ignores that the ALJ determined Plaintiff's allegations of symptoms are not credible.  He alleges limitations that were not included in the RFC assessed and he did not establish error in the credibility determination or the RFC assessment.  Plaintiff has shown no error in the ALJ's use of the grids to determine that there is unskilled sedentary work available in the economy to an individual with the RFC assessed.  He has not shown a limitation assessed by the ALJ which significantly reduces the occupational base of unskilled sedentary work.

Perhaps recognizing this oversight, Plaintiff argues for the first time in his Reply Brief that "the ALJ limited to Mr. Reitmayer to [sic] "work of a routine nature, but not in a fast paced environment," and that limitation precludes reliance on the grids to find unskilled sedentary work available to an individual with the RFC assessed.  (Reply 4)

(quoting R. 20).  Plaintiff presents this argument too late.  He did not present it in his opening brief.  The issue was first raised in his reply brief and was thereby waived. Martin K. Eby Const. Co., Inc. v. OneBeacon Ins. Co., 777 F.3d 1132, 1142 (10th Cir. 2015) (citing M.D. Mark, Inc. v. Kerr–McGee Corp., 565 F.3d 753, 768 n. 7 (10th Cir.2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.").  The reasons are two-fold:  "First, to allow [Plaintiff] to raise new arguments at this juncture would be manifestly unfair to the [Commissioner] who, under our rules, has no opportunity for a written response. . . . Secondly, it would also be unfair to the court itself, which, without the benefit of a response from appellee to an appellant's late-blooming argument, would run the risk of an improvident or ill-advised opinion, given our dependence as an Article III court on the adversarial process for sharpening the issues for decision."  Headrick v. Rockwell Int'l Corp, 24 F.3d 1272, 1278 (10th Cir. 1994) (internal quotation marks omitted) (alterations added).  In his Social Security Brief, Plaintiff objected to the ALJ's determination that the sedentary unskilled occupational base was not significantly reduced because the ALJ did not consider reductions in the occupational base resulting from pain, fatigue, poor concentration, and the need to elevate Plaintiff's legs.  The Commissioner addressed these arguments and demonstrated that they are not relevant here.  Plaintiff may not now present a different argument in the hopes of having a second bite of the apple.

Plaintiff has shown no error in the ALJ's decision below.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Supplement the

Record (Doc. 15) is DENIED.

**IT IS FURTHER ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the final decision of the

Commissioner.

Dated this 24th day of August 2016, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

31